Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III, Keno M. Henderson, Jr., Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

**David Charles STEIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 52440.

Court of Criminal Appeals of Texas.

March 16, 1977.

OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for delivery of lysergic acid diethylamide. Following a verdict of guilty, the court assessed punishment at five (5) years' confinement in the Department of Corrections.

In three grounds of error appellant advances one contention—that the trial court erred in denying his request that the names of the confidential informers be divulged.

The first count of the indictment under which the appellant was convicted charged that appellant "heretofore on or about April 3, 1974, did then and there unlawfully . . . did then and there knowingly and intentionally deliver to S. J. Pillion a controlled substance, namely: Lysergic Acid Diethylamide."

The record reflects that Officer S. J. Pillion and Lt. L. W. Rahr of the Pasadena Police Department were acting as undercover narcotics agents on April 3, 1974. They were working in conjunction with two women informers who had been working with the said police department for eight or nine months. At 2:30 p. m. on April 3, 1974, the women informers introduced the two undercover agents to the appellant in appellant's apartment. A delivery or sale

of 100 "hits" of L.S.D. was consummated at the time between the undercover agents and the appellant in the presence of the informers. A discussion in the presence of the informers then ensued about a later purchase of 1,000 "hits" from appellant if the "hits" met Pillion's standards. At 6 p. m. on that date Pillion received a telephone call from the appellant that he had 1,000 "hits" for sale. Pillion and Rahr and two other officers, Harris and Hayes, went to appellant's apartment about 8 p. m. Harris and Hayes set up a surveillance outside the apartment. Pillion and Rahr went to the apartment, and it appears that about this time they were joined by the informers. In the apartment appellant asked the undercover agents if they were still interested in the 1,000 "hits." In the presence of the informers the officers stated they were not only interested in 1,000 "hits," but still another sale of another 1,000 "hits." The appellant then left and said he would be back in 25 minutes. When he left apparently the informers also left. Appellant returned in about 45 minutes and stated he had brought his supplier with him. Appellant then left the apartment and returned shortly with the substance later shown to be L.S.D. He handed the substance to Agent Rahr and stated he would get another 1,000 "hits" as requested. As he was handed the $800, he was arrested. Officers Harris and Hayes arrested the supplier, John Floyd, outside the apartment.

Appellant testified in his own behalf and claimed entrapment. He related that on April 1, 1974 he was approached by a girl who said her name was Debbie in a cafe near his apartment. She was with another girl whose name he could not remember. Both were in their early twenties. Debbie asked if he had any marihuana, and he replied he did not. Debbie inquired where appellant lived, and he told her and invited her and her friend to the apartment. At the apartment Debbie told the appellant she and her friend were "hooked" on heroin and they had come from Tennessee with their boyfriends and were looking for "acid." She said her boyfriend was looking for "acid" so that he could sell it for a profit up

North. She stated she wanted to get off heroin and stay in Houston. She asked appellant if he were looking for someone, she liked him. She said if the boyfriends got the "acid" they would leave town. Appellant told Debbie there was nothing he could do for her. She gave him a phone number and told him she was staying at a hotel on Main Street.

When he came home that evening from looking for work, he found a note and called the girls at the Chief Motel. Whether he contacted them is not shown by the record. The next evening or night they came to his apartment and knocked, but he would not let them in as he did not want to become involved. The next morning, as he was leaving, he encountered Debbie and her friend on the steps to the apartment. They returned to the apartment, and after some 45 minutes of discussion he finally agreed to try to get their boyfriends some L.S.D. He contacted a friend, who gave him a name of a friend to contact. At 2:30 p. m. he met the two girls at his apartment. They introduced Officers Pillion and Rahr as their boyfriends, giving other names. He acknowledged that he sold 100 "hits" to the "boyfriends" and that they asked if he could get 1,000 more "hits" for them for $800. Appellant stated he agreed to try as he was "doing it for the girls."

Appellant testified he talked to the supplier and that later at 8 p. m. the officers and the girls arrived at the apartment and he told them of the agreement. He left the four in his apartment and went to obtain the L.S.D. When he returned, the girls were gone but the officers-agents purchased the L.S.D. from him and he was arrested. He claimed that he was not to get any money out of the transaction, that he was only doing it for the girls. He claimed he was entrapped.

By pre-trial motions to suppress evidence and for discovery the appellant called to the court's attention that his defense was entrapment and he requested the names and addresses of the informers. Prior to trial the motions were overruled. After the testimony of Officers Pillion and Rahr, the

appellant again requested the names of the informers. It was refused. After perfecting a bill of exception by interrogating Officer Pillion in the absence of the jury, the request was renewed and again denied.

It has repeatedly been held that unless the informer participated in the offense, was present at the time, or was otherwise shown to be a material witness or as to whether the accused knowingly committed the act charged, his or her identity need not be disclosed. *Carmouche v. State,* 540 S.W.2d 701 (Tex.Cr.App.1976); *Sigard v. State,* 537 S.W.2d 736 (Tex.Cr.App.1976); *Barber v. State,* 511 S.W.2d 937 (Tex.Cr.App.1974); *Bueno v. State,* 501 S.W.2d 339 (Tex.Cr.App.1973); *Sessions v. State,* 498 S.W.2d 933 (Tex.Cr.App.1973); *James v. State,* 493 S.W.2d 201 (Tex.Cr.App.1973). See also *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

Relying upon *Barber v. State,* supra, the State argues that the necessity for disclosing the informers' names did not arise until after the appellant had testified and that thereafter no request for the disclosure of the informers' names was made.

In *Barber* this court wrote:

"At the time during the trial when the Court overruled appellant's motion for disclosure of the informer the trial court had before it only the testimony of Officer Rangel. At this time no evidence existed to indicate that the informer had done anything other than notify the Officer where someone was selling heroin. Only after appellant testified did the trial court become aware of the alleged prior incident involving Sonny Gant and his alleged participation. At the close of his testimony appellant did not renew his request for the disclosure of the informer's identity. Absent such a motion for disclosure, no error was committed. *Willoughby v. State,* Tex.Cr.App., 481 S.W.2d 893."

While it would have been safer practice for the appellant to again request disclosure of the informers' names after his own testimony, we conclude that the instant case can be distinguished from *Barber.* The testimony of Officers Pillion and Rahr showed they were working with two women informers who made the first contact with the appellant and introduced the officers to the appellant as their boyfriends, were present at the 2:30 p. m. sale of 100 "hits" of L.S.D. and present during the discussion of the delivery of 1,000 more "hits," which was the basis of the offense charged.[1] Again they were present that evening with the officers at 8 p. m. in appellant's apartment when further discussion took place as to arrangements for the delivery of the L.S.D. Clearly they were shown to be material witnesses, and the court erred in refusing to order the State to disclose the names of the informers. See *James v. State,* supra.

The judgment is reversed and the cause ordered remanded.

---

1. There appears to be no disagreement among the parties that the delivery of L.S.D. charged was the one near 9 p. m. on April 3, 1974 rather than the 2:30 p. m. sale. The record reflects an indictment charging the earlier sale.