Donathon Bernard
CHANDLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–85–165–CR.

Court of Appeals of Texas,
Austin.

Jan. 13, 1988.

Leonard Martinez, Austin, for appellant.

Ronald Earle, Dist. Atty., Carl Bryan Case, Asst. Dist. Atty., Austin, for appellee.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

CARROLL, Justice.

## BACKGROUND

A jury found appellant Donathon Chandler guilty of intentional murder in the shooting death of Jonathan Slaughter and assessed punishment at 30 years' imprisonment. He brings six points of error, which we will group and discuss by issue. We will affirm the judgment of conviction.

## DISCUSSION

1. *Right of Witness Not to Testify*

Appellant's primary point of error is that the trial court erred in permitting a defense witness to invoke his Fifth Amendment right not to testify. During the trial, appellant's attorney called Tim Felder as a defense witness. Felder had previously pleaded guilty to aggravated assault in connection with the same incident. A hearing was held outside the presence of the jury and Felder refused (after giving his name) to answer any questions, invoking his right to refuse to testify under the Fifth Amendment to the United States Constitution. The trial court permitted the refusal.

Appellant claims that Felder's testimony could not have placed him in criminal jeopardy because he had already pleaded guilty to, and been sentenced for, participation in the only crime for which his testimony could incriminate him. The State responds that the witness could reasonably have believed that his testimony could indeed have led to further prosecution. We agree.

*Grayson v. State*, 684 S.W.2d 691 (Tex. Cr.App.1984) holds that a defendant's right to compulsory process (*i.e.*, to call a witness in his favor) must yield to an individual's privilege against self-incrimination. If the privilege did apply here, then the trial court was correct in permitting Felder to refuse to testify.

■ Whenever a witness "takes the Fifth," to determine whether the privilege applies, the court must decide whether the questions propounded "present a reasonable danger of further crimination in light of all the circumstances, including previous disclosures." C. McCormick, *McCormick on Evidence,* § 140 at 346 (3rd ed. 1984). *See also Hoffman v. U.S.*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). If so, the defendant may not call as a witness a codefendant who has indicated that he will assert his privilege against self-incrimination under the Fifth Amendment. *U.S. v. Roberts*, 503 F.2d 598 (9th Cir.1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975); *Whitmore v. State*, 570 S.W.2d 889 (Tex.Cr.App.1978). The privilege extends to any testimony the witness may *reasonably believe* could lead to criminal prosecution. *Greene v. State*, 537 S.W. 2d 100, 103 (Tex.Civ.App.1976, no writ).

■ The question we must answer, then, is this: could Felder have reasonably believed that responding to questions about the incident presented such a danger? We think so. The trial judge in the Chandler case still retained jurisdiction over Felder's case, in which Felder had pleaded guilty to

aggravated assault in the same incident. While double jeopardy considerations would prohibit alteration of the sentence imposed pursuant to the plea bargain, the possibility of prosecution for perjury still existed. If the trial court had compelled Felder to testify in Chandler's trial, and his testimony contradicted any testimony he gave in his own judicial confession, then he would be subject to being charged with and tried for perjury. Tex.Pen.Code Ann. §§ 37.02, 37.03, 37.04, 37.06 (Supp.1987).

Appellant cites *Washington v. State*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), for the proposition that prohibiting a codefendant (who had already been convicted of an offense arising out of the same transaction) from testifying for a defendant was reversible error. However, that case is factually unlike this one, because in *Washington*, a statute prevented the codefendant from testifying, even though he wanted to. Here, the witness *chose* not to testify.

We recognize that there is authority for the proposition that, once a witness has pleaded guilty to, or been convicted of, the offense for which his testimony might incriminate him, he should not be permitted to claim the Fifth Amendment privilege. *Franco v. State*, 491 S.W.2d 890 (Tex.Cr.App.1973); *Cherb v. State,* 472 S.W.2d 273 (Tex.Cr.App.1971). However, those cases are distinguishable from the present one because the holdings in them hinged on the fact that no further prosecution was alleged to be possible. There was no possibility of perjury alleged, as is true in the instant case.

We hold that Felder relied on the Fifth Amendment in the reasonable belief that if he did not, he would be subject to further punishment. Therefore, the trial judge's decision to permit him to refuse to testify in the Chandler case was proper.

### 2. *Jury Selection*

■ In two points of error, appellant challenges the method by which the jury panel was selected and the exclusion of Black venirepersons from the jury. As to the panel selection, appellant alleges that the court's use of voter registration records is unrepresentative of the community, and that, therefore, the jury panel chosen on that basis deprived appellant of due process. However, the Texas Court of Criminal Appeals has already held in *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr.App. 1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977) that using county voter registration lists as the basis for juror selection does not deprive defendants of due process or equal protection of the laws.

The other jury selection issue is more difficult. Appellant, citing the watershed decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), claims error in the State's use of peremptory challenges to exclude two Black jurors from the jury panel. We disagree.

Before analyzing the discrimination argument on the merits, however, we must consider whether appellant preserved error on the point. In *Henry v. State*, 729 S.W. 2d 732 (Tex.Cr.App.1987), the Court of Criminal Appeals held that, for a *Batson*-type objection to be timely, it must be made "after the composition of the jury is known, but *before* the jury is sworn and the venire panel is discharged. It is at this time that the trial court has a number of options to correct any error discovered in a *Batson* hearing...." (emphasis in original). The record reflects that appellant failed to object to the peremptory strikes against Black jurors until *after* the jury had been sworn and the panel discharged. It would appear, then, that his objection was untimely. However, since this case was tried in 1985, *Batson* was handed down in 1986, and *Henry* was decided in 1987, we have considered his point of error as if he *had* properly preserved error, and find it without merit.

■ In cases (such as this one) tried before the *Batson* opinion, it has heretofore been the practice of the Court of Criminal Appeals to remand the *Batson* juror discrimination issue to the trial court for a hearing to determine whether the exclusion was discriminatory or, instead, whether sufficient independent, nondiscriminatory

reasons for the venirepersons' exclusion existed. *See, e.g., Henry v. State, supra; Keeton v. State* 724 S.W.2d 58 (Tex.Cr. App.1977). Normally, of course, we would do the same here. However, in this appeal, such a hearing has in effect already been held. The trial court has already made the kind of factual determination called for by *Henry.*

After the trial court swore in the jury and dismissed the rest of the panel, he invited objections from counsel, whereupon appellant's counsel objected that the prosecutors had used peremptory strikes against the only two Black panelists. (Since this case was tried before the *Batson* opinion was handed down, appellant evidently made his objection in anticipation of *Batson.*) The trial judge then noted that one of the Black panelists had failed to fill in, as required, a juror information card. The prosecuting attorney then reminded the judge that the other Black panelist had testified during the voir dire that her son had been convicted of a crime and that the venirewoman had herself been accused of an offense. The record of the voir dire examination—which the trial judge presided over—supports this position. After hearing this discussion, the judge then overruled appellant's counsel's objection to the exclusion of Black jurors.

We hold that the hearing and voir dire supplied the trial court with sufficient information to decide whether the exclusion of Black panelists was proper under *Batson.* It is clear that he was able to consider all reasons—discriminatory and otherwise—for the peremptory strikes before ruling on the objection. Remanding the issue in this 1985 case to the trial court would serve no useful purpose.

Having found that the trial court properly considered the issues that would be raised in a *Batson* hearing, we must now ask whether his decision based on that consideration was erroneous. We find that it was not.

■ *Batson* does prohibit prosecutors from intentionally discriminating against minority defendants by striking potential jurors solely because of their race, but it

establishes a two-prong test that an appellant must meet if he wishes to make out a prima facie case of intentional discrimination. First, he must show that he is a member of a minority group, and that the prosecution exercised peremptory challenges to remove members of the same minority group from the panel. Second, he must show that these facts and other relevant circumstances raise an inference that the prosecutor excluded the veniremen from the jury on account of their race. *Batson,* 106 S.Ct. at 1723. Merely showing the exclusion of minority jurors is not enough.

■ We hold that appellant failed to satisfy the second prong of the *Batson* test. He has not demonstrated, nor does the record reflect, any circumstances that raise an inference of intentional discrimination. Moreover, even if he had made out a prima facie case, the record reveals sufficient independent reasons for the exclusion of the two Black veniremen: one failed to fill out a juror information card; the other had a son who had been convicted of committing a violent offense and had been charged with one herself. These factors would have been sufficient to rebut a prima facie case. The record is clear: there is no basis for the *Batson*-type objection.

### 3. *Prohibition of Polygraph Evidence*

■ Appellant next claims that the trial court should have admitted into evidence the result of an exculpatory polygraph examination. He offers no legal authority for this contention, except by analogy to a case upholding the reliability of certain breath-analyzer tests.

However, *Crawford v. State,* 617 S.W.2d 925, 930 (Tex.Cr.App.1981) makes polygraph examination results inadmissible for any purpose in a criminal trial.

### 4. *Charging on the Law of Parties*

■ Appellant asserts that the trial court erred in charging the jury on the law of parties when the indictment did not allege that appellant was a party. Charging on the law of parties if the indictment does

not allege that defendant participated as a party to the offense is not erroneous. *Pitts v. State,* 569 S.W.2d 898 (Tex.Cr.App. 1978).

### 5. *Use of Juvenile Probation Officer as Reputation Witness*

■ Appellant claims error in the trial court's allowing the State to call appellant's juvenile probation officer as a witness at the punishment phase of the trial. A juvenile officer is competent to testify to a defendant's reputation. *Ellis v. State,* 543 S.W.2d 135 (Tex.Cr.App.1976).

### CONCLUSION

All of appellant's points of error are overruled. We affirm the conviction and sentence of the trial court.