NO. 07-02-0461-CV


 

IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



OCTOBER 7, 2003



______________________________




SEARS ROEBUCK AND CO., APPELLANT



V.



CHRISTINE J. TRIPP, INDIVIDUALLY AND AS PERSONAL 


REPRESENTATIVE OF THE ESTATE OF TERRY TRIPP,


DECEASED, AND AS NEXT FRIEND OF THOMAS L. TRIPP,


A MINOR, AND LELAND TRIPP AND BERNADINE TRIPP, APPELLEES




_________________________________



FROM THE 128TH DISTRICT COURT OF ORANGE COUNTY;



NO. A000482-C; HONORABLE PAT CLARK, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

ORDER LIFTING STAY


 On April 25, 2003, appellees filed a motion to mediate the underlying controversy
prior to submission of this appeal. The motion was taken under advisement and the
parties were notified by letter dated May 13, 2003, that this Court would be hearing cases
in Beaumont in July. The Court suggested that if the parties were not ready to present oral
argument in Beaumont, that they file an agreed motion to submit this appeal in Amarillo
this fall should mediation prove unsuccessful. An agreed motion was filed by which the
parties requested a setting in Amarillo at the earliest time after August 11, 2003. On May
29, 2003, this Court issued an order that the appeal be stayed until October 1, 2003, to
allow time for mediation. The order also provided that in the event the controversy was
not settled by the October 1 deadline, the appeal would proceed on the docket and be set
for oral argument in Amarillo in November or December 2003. The deadline has lapsed
and the parties have not communicated the status of the controversy to the Clerk of this
Court.

 Accordingly, the order for stay is lifted and the appeal will proceed in due course
and be set for oral argument in November 2003, in Amarillo, Texas.

 It is so ordered.

 Per Curiam 

 



ame="DATE">SEPTEMBER 17, 2008
______________________________

JULIAN D. RODRIGUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-408301; HONORABLE BRADLEY S. UNDERWOOD, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant, Julian D. Rodriguez, was convicted by a jury of four counts of aggravated
robbery and the same jury assessed appellant’s punishment at 75 years incarceration in
the Institutional Division of the Texas Department of Criminal Justice. Through two issues,
appellant contends the evidence was legally insufficient to support the conviction and the
trial court committed reversible error in permitting a defense witness to claim her Fifth
Amendment privilege against self-incrimination. We affirm.
 
Factual and Procedural Background
          On September 20, 2004, Kimberly Peterson, Heather Weaver, Kelli Steger, and
Bethany Seher had been at Arby’s restaurant eating and studying together. About
midnight, they exited the restaurant and were saying goodbye to each other when they
were approached in the parking lot by a male they later identified as appellant. The man
demanded their purses. When the assailant demanded their purses, some of the group
thought he was kidding until they saw a gun held down by his side. The assailant collected
the purses from the four women and fled. The victims retreated to the restaurant and
called 911. Each of the victims later went to the police and gave a statement. Each
described the assailant as a Hispanic male between 5' 4" to 5' 6" in height. None of the
victims described any tattoos or other distinguishing marks on the assailant. Each victim
affirmatively stated that the assailant was armed with a “gun.” 
          The police, working on a “Crime Line” tip, put together a photographic lineup for the
victims to view. Appellant was not a suspect in the first photo lineup. None of the victims
identified any of the members of the first photo lineup as the assailant. Appellant was later
arrested for forgery while attempting to negotiate a check using identification taken from
Kimberly Peterson. Appellant subsequently pleaded guilty to the forgery charge. After
learning of appellant’s arrest for the forgery, the police put together a second photographic
lineup and three of the victims identified appellant’s photo as being the assailant. At trial,
all four victims identified appellant as the assailant. 
          During the trial, appellant’s counsel concentrated his cross-examination of the
victims around the issue of the gun. Kimberly testified that what appellant was holding in
his hand was held as you would expect a gun to be held and that appellant was waiving
the gun around his belt, as if using it for emphasis. She testified that the gun appeared to
be black and was not a revolver. It had a long barrel and there was no doubt in her mind
it was a gun. On cross-examination, appellant’s counsel elicited testimony that Kimberly
did not know if the gun was operational or real. She testified that she never heard any
metallic click or noise and that she did not know much about guns. Each of the other
victims identified the item as a gun, yet all admitted they did not know if the gun was
operational or real. Further, each professed not to have much experience with guns. 
          After the State rested its case-in-chief, appellant called Catherine Lucero as a
witness. Prior to her testimony, a question about the witnesses’s Fifth Amendment
privilege was raised. After inquiry by the trial court, the court appointed an attorney to
represent her. After discussing the matter with the attorney, the witness invoked her Fifth
Amendment privilege against self-incrimination and the trial court dismissed the witness
without testifying. 
          The jury convicted appellant and assessed a term of confinement of 75 years in
prison. This appeal followed. 
Legal Sufficiency 
          Appellant’s first contention is that the evidence is legally insufficient to prove that
appellant exhibited a firearm during the commission of the robbery. In assessing the legal
sufficiency of the evidence, we review all the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620
(Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not
sit as a thirteenth juror, but rather must uphold the jury’s verdict unless it is irrational or
unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d
866, 867 (Tex.Crim.App. 1988).
          Appellant correctly points out that the offense of aggravated robbery is committed
when a person uses or exhibits a deadly weapon during the commission of a robbery. See
Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 2003).


 A deadly weapon is defined as a
firearm or anything manifestly designed, made, or adapted for the purpose of inflicting
death or serious bodily injury or anything that, in the manner of its use or intended use, is
capable of causing death or serious bodily injury. See § 1.07(a)(17)(A).
          The indictment in this case alleges, in pertinent part, that appellant,
did then and there intentionally or knowingly, while in the course of
committing theft of property and with intent to obtain and maintain control of
said property, threaten and place KIMBERLY PETERSON in fear of
imminent bodily injury, and the defendant did then and there use and exhibit
a deadly weapon, to-wit: a firearm, that in the manner of its use and intended
use was capable of causing death and serious bodily injury.
 
The indictment contains three other counts, one for each other victim, similarly worded. 
Appellant’s contention is that the proof at trial was that a “gun” was used, but there is no
evidence in the record that the instrument used was a “firearm.” Further, “firearm” is
defined in the Penal Code as “any device designed, made, or adapted to expel a projectile
through a barrel by using the energy generated by an explosion or burning substance or
any device readily convertible to that use.” See § 46.01(3). According to appellant, since
the State indicted him using the unnecessary descriptive term “firearm,” the State had to
prove the descriptive matters as alleged. See Gomez v. State, 685 S.W.2d 333, 336
(Tex.Crim.App. 1985) (en banc). In the final analysis, appellant’s contention is that the
testimony of the four victims that appellant used a “gun” is not legally sufficient to prove
“firearm” as alleged in the indictment.
          This issue has been decided against appellant’s theory in a number of reported
cases. In one instance, the testimony was that the defendant used a “gun,” “revolver,” and
a “pistol” at various places in the record. Wright v. State, 591 S.W.2d 458, 459
(Tex.Crim.App. 1979). There, the issue was that the witnesses did not describe the
instrument as a “firearm,” which is a deadly weapon per se. Id. The court disagreed,
saying, “Testimony using any of the terms ‘gun,’ ‘pistol,’ or ‘revolver’ is sufficient to
authorize the jury to find that a deadly weapon was used.” Id. In the Gomez case, the
indictment, as here, alleged the defendant used a deadly weapon, “namely a firearm.” 
Gomez, 685 S.W.2d at 336. As in the case before the court, there was no weapon
produced at trial and the witness identified the instrument as a “gun” or “revolver.” Id. 
Against a sufficiency of the evidence challenge, the Court in Gomez found the testimony
regarding the deadly weapon sufficient to sustain the verdict of guilty. Id. In Cruz, the
issue before the court was whether testimony that the defendant had used a “gun” was
legally sufficient to support a conviction alleging a “deadly weapon, to-wit: A FIREARM.” 
Cruz v. State, 238 S.W.3d 381, 388 (Tex.App.–Houston [1st Dist.] 2006, pet. ref’d). In
discussing the facts of the case, the court pointed out that there was nothing in the
testimony to suggest that the gun used was a toy or anything other than a firearm. Id. at
389. Further, the court pointed out that the victim believed the gun was real and that if she
did not comply with the appellant she was going to get shot. Id. In Cruz, the court found
the evidence to be legally sufficient. Id. Other cases have found that testimony about a
“gun” was sufficient to prove “firearm.” Price v. State, 227 S.W.3d 264, 267
(Tex.App.–Houston [1st Dist.] 2007, pet. dism’d); Edwards v. State, 10 S.W.3d 699, 702
(Tex.App.–Houston [14th Dist.] 1999, pet. dism’d). 
          The testimony demonstrated that each victim saw a weapon that they described as
a gun. Further, each victim testified that they feared for their safety as appellant pointed
the “gun” at them and stated, he was not “f—ing kidding.” Under the facts, as presented,
the jury was allowed to make reasonable inferences and deductions that the “gun” was, in
fact, a firearm. Davis v. State, 180 S.W.3d 277, 286 (Tex.App.–Texarkana 2005, no pet.). 
 When viewing the evidence in the light most favorable to the verdict, we cannot say that
the jury acted irrationally in finding this essential element of the offense against appellant
beyond a reasonable doubt. Accordingly appellant’s first contention is overruled. 
 
Fifth Amendment Privilege of Appellant’s Witness
          Appellant next contends that the trial court committed reversible error when the
court granted a witness, Lucero, called by appellant to claim her Fifth Amendment privilege
against testifying rather than allowing appellant to offer limited testimony about issues that
appellant claimed would not have incriminated the witness. A defendant has the right to
present evidence to the jury so that they may determine what the operative facts are. See
U.S. Const. amend. VI. See also Tex. Const. art. I, § 10. However, a person’s
constitutional privilege against self-incrimination overrides a defendant’s right to
compulsory process. Boler v. State, 177 S.W.3d 366, 371 (Tex.App.–Houston [1st Dist.]
2005, pet. ref’d) (citing Bridge v. State, 726 S.W.2d 558, 567 (Tex.Crim.App. 1986)). What
we, as the reviewing court, must decide is whether Lucero reasonably believed that
answering the questions of appellant’s trial attorney would present a reasonable danger
of self-incrimination. Chandler v. State, 744 S.W.2d 341, 342 (Tex.App.–Austin 1988, no
pet.). 
          After the State rested its case-in-chief, appellant called Lucero to testify. After a
colloquy with the attorneys, the trial court allowed the witness to be called and sworn. The
court inquired of Lucero whether she understood that her testimony might incriminate her
and subject her to prosecution. Upon Lucero answering in the affirmative, the trial court
further inquired whether or not she was represented by an attorney. Upon being informed
she was not represented by counsel and that she could not afford an attorney, the trial
court appointed counsel to discuss her testimony and her right against self-incrimination. 
After a short recess, during which appointed counsel visited with Lucero about her
proposed testimony, the trial court inquired about whether Lucero intended to invoke her
Fifth Amendment privilege against self-incrimination. Appointed counsel answered that
Lucero intended to claim her right against self-incrimination. The trial court then stated that
he could not allow the witness to be placed on the stand with the knowledge that she
intended to claim her right against self-incrimination.
          The trial court did allow appellant’s counsel to make a proffer of what he expected
Lucero to testify to if she had been allowed to testify. Through the proffer, appellant sought
to show:
1. That, at the time of the incident in question, Lucero was in a relationship
with appellant and had three children with appellant;

 
2. That she knew appellant’s routine at night and he was not out at night
during the operative time in question;

 
3. That she never saw him in possession of a firearm;

 
4. That he had numerous tattoos on his neck and arms;

 
5. That appellant’s tattoos were definitely visible to anyone;

 
6. That Lucero was addicted to drugs at the time of the forgery, that
appellant was arrested for and later pleaded guilty to;

 
7. That Lucero gave the check to appellant that was the basis for his arrest
for forgery and was, in fact, with him at the time of the arrest; and

 
8. That she had acquired the check from another individual and appellant
had no knowledge of how she obtained the check.
 
          It is clear to the Court that most of the testimony of Lucero would have incriminated
her in the forgery offense. What we can ascertain from a review of the proffer by appellant
is that Lucero could have reasonably believed that her testimony would, in fact, subject her
to criminal prosecution. Id. Further, the trial court was correct in not allowing appellant to
place Lucero on the witness stand with the knowledge that she intended to assert her Fifth
Amendment privilege. Bridge, 726 S.W.2d at 567. 
          Finally, it must be observed that there is no claim that there were not other family
members or associates who could have testified about appellant’s tattoos and work habits. 
In fact, appellant took the witness stand and testified about the tattoos and showed them
to the jury. 
          The trial court’s decision to allow Lucero to claim her Fifth Amendment privilege is
supported by the record. Accordingly, appellant’s contention is overruled.
Conclusion
          Having overruled appellant’s issues, the trial court judgment is affirmed. 
 
                                                                           Mackey K. Hancock

                                                                                    Justice







Do not publish.