Opinion issued August 24, 2006












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00244-CR




ANGEL LUIS CRUZ, Appellant

V.

THE STATE OF TEXAS , Appellee




On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 980983




O P I N I O N

          A jury found appellant, Angel Luis Cruz, guilty of aggravated robbery and the
trial court assessed punishment at 30 years’ confinement. In five points of error,
appellant contends that (1) the trial court erroneously admitted hearsay evidence; (2-3) the evidence is legally and factually insufficient to support his conviction because
the complainant’s testimony was not credible; (4-5) the evidence is legally and
factually insufficient to support a conviction for aggravated robbery because there
was no evidence that the gun used during the offense was a firearm. We affirm.
BACKGROUND
          On March 11, 2004, the complainant, Gurleen Kaur, was alone at home when
she heard a knock at her door. She had been expecting someone from the electric
company because the lights at her home were out. When she opened the door, she
saw appellant. He was smiling and holding a piece of paper. He said something to
Kaur that she did not understand because of appellant’s thick accent. Appellant held
up the paper he was holding and looked to the ceiling at the back of Kaur’s house. 
Kaur thought that appellant was saying something about the lights, so she turned
around. While she had her back turned, appellant came inside the house and pulled
out a gun. Kaur was afraid and thought that she was going to be shot and killed.
          Appellant indicated to Kaur that she should be quiet and he forced her to walk
further into the house. When they reached Kaur’s mother’s bedroom, appellant said,
“Money, money, give me money.” He put on an orange bandana that covered his face
up to his nose. Kaur told him that there was nothing in the house to give him, and she
pulled out the drawers to her mother’s dresser to show him. Appellant started to pull
the drawers out himself, but he remembered to put on gloves first. He then made
Kaur sit on the bed, while he taunted her by shaking his belt.
          Kaur secretly grabbed her cellular telephone and called 9-1-1. She started
pleading with appellant to go to another house on Klamath Falls Street in the hope
that the 9-1-1 operator would discern her location. Kaur then dropped the telephone
because she was afraid appellant would notice it. 
          When appellant asked Kaur something about the police, she was afraid that he
had discovered the 9-1-1 call. Kaur handed the house telephone to appellant and told
him to leave and to take the telephone with him so that she could not call the police.
She promised appellant that she would not call the police if he would just leave.
          Appellant saw a costume-jewelry earring on the floor and said, “gold, gold.” 
Kaur looked for some gold, but could not find anything. Appellant brought Kaur
back to her mother’s bedroom, where he bound her arms and legs with telephone
cords. He took a cloth from one of the drawers and put it over Kaur’s eyes. He
grabbed Kaur’s right breast, but she was able to free one hand and push him away. 
Appellant then tied Kaur’s hands much tighter. 
          Kaur told appellant that there might be some gold in the garage, so appellant
made her hop to the garage. Kaur did not find any gold, so appellant freed Kaur’s
legs so she could walk and they returned to Kaur’s mother’s bedroom.
          Realizing that the police were not going to respond to her 9-1-1 call, Kaur
eventually broke free, ran to her room, and locked the door. However, the bottom
hinge of the door was broken, so appellant was able to break in very quickly.
          Appellant became very angry by Kaur’s escape attempt, grabbed Kaur by the
neck, pinned her to the wall, and began choking her. After wrestling with Kaur,
appellant stood up and stomped on Kaur’s neck. Appellant flipped Kaur on her
stomach and started stomping on her back. He sat down on Kaur’s back, pulled her
pajama bottoms down, and squeezed her buttocks. He then pushed two fingers into
her anus. Kaur pulled herself up to her knees, but appellant grabbed her hair and
slammed her jaw into the edge of the bed. Appellant also jabbed his knee into the
back of Kaur’s neck.
          When appellant started choking Kaur again, she reached for appellant’s gun,
which she saw lying on the bed. Kaur was unable to fire the gun because she could
not locate the safety, so appellant grabbed it away from her and started choking her
again. Kaur was finally able to kick appellant off of her, and the two sat there
exhausted.
          Appellant said, “Okay, now—now you give me money.” Kaur looked for
money one more time, but could find none. Appellant took Kaur back to her mother’s
bedroom, where he made her get in the closet. He said, “Don’t call the police or I’ll
come.” After Kaur heard appellant leave, she called a friend, her mother, and finally,
the police.
          V. Johnson with Harris County Constable, Precinct 5, was dispatched to Kaur’s
home. He talked to Kaur, who was very upset and had red marks on her neck and a
scratch on her forehead. Kaur told Johnson that she could not swallow. Some of the
rooms in the house had been ransacked. Kaur repeatedly asked to be allowed to
change her clothes, which led Johnson to believe that Kaur might have been sexually
assaulted. However, Kaur seemed ashamed and did not want to talk about it.
          Three days after the robbery, Kaur’s cousin, Jaswinder Singh, who lived two
blocks away from Kaur, was sitting near the pool in front of his house when he
noticed a car circling through the neighborhood. Singh noticed that the person in the
car looked like the person his cousin had described as her assailant, so he followed
the car. The car traveled from Singh’s street to Kaur’s street and then continued
circling the neighborhood several times. Singh thought this was suspicious, so he
wrote down the license plate number of the car.
          The next day, Sergeant J. E. Cashion with Harris County Constable, Precinct
5, was dispatched to a house near Kaur’s house. Kaur’s mother was there and was
extremely upset. She told Cashion that, as she was walking home from Singh’s
house, she had been followed by a black Nissan Altima, which she thought might be
related to the robbery. Singh, who arrived at the house shortly after Cashion, gave
Cashion the license plate from the car he had seen the day before. Cashion “flagged
the license plate number” so that any officer could see that it was linked to a
suspicious person report.
          Five days after the robbery, P. Gerren with Harris County Constable, Precinct
5, was on patrol less than a mile from Kaur’s house when he saw a black Altima with
the license plate number that had been “flagged.” He pulled the car over and noticed
that its registration had expired. Appellant, the driver, spoke little English and had
a very strong accent. He had a pair of gloves in his pockets and a loaded .380 caliber
semi-automatic pistol under the seat in his car. Appellant was arrested for unlawfully
carrying a weapon and the car was searched. In the trunk, the police found several
real estate forms and a fanny pack that contained pry bars and other tools.
          After appellant was arrested, Detective C. Brown of the Harris County Sheriff’s
Department, placed appellant’s picture in a photospread and showed it to Kaur. Kaur
positively identified appellant as her assailant.
HEARSAY
          In point of error one, appellant contends the trial court erred by admitting
hearsay evidence. Specifically, appellant contends the trial court erred by permitting 
Sergeant Cashion to testify that the complainant’s mother, Sarbjit Kaur, told him that
she saw a black Altima car following her in the neighborhood. The State responds
that Kaur’s mother’s statements were admissible, through Cashion’s testimony, as
excited utterances.
          During Cashion’s testimony, the following exchange took place:
[Prosecutor]: Now, when you met with [Kaur’s mother], what was she
like? What was her demeanor like?
 
[Cashion]: She was very upset and scared.
 
[Prosecutor]: And were you able to determine why she was scared?
 
[Cashion]: Yes, ma’am. After speaking with her—she was walking
home from her brother [sic] from Canaan Bridge over to Klamath Falls. 
And as she was proceeding west on Klamath Falls, she noticed a black
vehicle following her.
 
[Prosecutor]: And how many time did she see that vehicle?
 
[Cashion]: About three times.
 
[Prosecutor]: Why was her attention drawn to the vehicle, if you know?
 
[Cashion]: Because the vehicle — 
 
[Defense Counsel]: Objection, Judge. Calls for hearsay and speculation.
 
[The Court]: Lay a foundation for it.
 
[The Prosecutor]: You said she was upset when you spoke with her?
 
[Cashion]: Right.
 
[The Prosecutor]: Okay. And how could you tell she was upset?
 
[Cashion]: Well, she was nervous and very shaken at the mere fact that
– trying to determine from her exactly what was transpiring out there at
the scene.
 
[Prosecutor]: Okay. And while she was in this upset or excited state, did
she tell you what drew her attention to the black vehicle?
 
[Cashion]: Right, sure did. That — 
 
[Defense Counsel]: Objection, Your Honor. That calls for a hearsay
answer.
 
[The Court]: That’s overruled.
 
[Cashion]: That when she was walking home, that the vehicle was
following real slowly behind her. And as she was getting close to her
house, the vehicle drove right past and she at that time recognized that
vehicle as possibly being connected to the robbery.

          Appellant did not voice a hearsay objection until after Cashion testified that
Mrs. Kaur told him that she had been followed by a black car when she was walking
home from her brother’s house, and that she had seen the car pass three times. The
only additional information that came after appellant’s hearsay objection was Mrs.
Kaur’s statement that she believed that the vehicle may have been involved in the
robbery. 
          In order to preserve error for appellate review, a timely specific objection must
be made and a ruling obtained. See Tex. R. App. P. 33.1(a)(1)(A). In order to be
considered timely, the objection must be made at the first opportunity or as soon as
the basis of the objection becomes apparent. See Johnson v. State, 803 S.W.2d 272,
291 (Tex. Crim. App. 1990); Worthington v. State, 859 S.W.2d 530, 532 (Tex.
App.—Houston [1st Dist.] 1993, pet. ref’d). An objection made after the prosecutor
has elicited the testimony comes too late. See Angelo v. State, 977 S.W.2d 169, 177
(Tex. App.—Austin 1998, pet. ref’d). Appellant did not preserve error on his hearsay
objection because he did not object until after the prosecutor elicited the testimony
about Mrs. Kaur being followed in her neighborhood by a black car.
          We further conclude that, even if the trial court erred in admitting this
evidence, it was harmless error. To determine whether the erroneous admission of
evidence amounts to reversible error, we look to Texas Rule of Appellate Procedure
44.2(b), governing non-constitutional error in criminal cases. See Tex. R. App. P.
44.2(b). Neither appellant nor the State bears the burden of demonstrating whether
appellant was harmed by the trial court’s error. See Johnson v. State, 43 S.W.3d 1, 5
(Tex. Crim. App. 2001). Rather, it is this Court’s responsibility to assess, from the
context of the error, whether the judgment requires reversal because the error affected
appellant’s substantial rights. See id. Error affects a substantial right when it has a
substantial and injurious effect or influence in determining the jury’s verdict.
Johnson, 43 S.W.3d at 3–4. In this case, we have positive eyewitness testimony from
the complainant identifying appellant as her assailant. That the complainant’s mother
saw a black car following her through the neighborhood and thought it might be
related to the robbery adds little to the evidence. Additionally, Kaur’s cousin, Singh, 
also testified that he had seen a black car circling the neigborhood and that he had
written down the license plate number, which was the same as the license on the car
appellant was driving when he was arrested. In light of the other evidence submitted
at trial, we cannot say that the admission of the alleged hearsay, if erroneous, affected
appellant’s substantial rights.
          We overrule point of error one.
SUFFICIENCY OF THE EVIDENCE
          In points of error two and three, appellant contends the evidence is legally and
factually insufficient to support the verdict because the complainant’s testimony
identifying him as her assailant is not credible. In points of error four and five,
appellant contends evidence is legally and factually insufficient to support a
conviction for aggravated robbery because there was no evidence that the gun used
during the offense was a firearm. 
Standard of Review
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict and determining whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The trier of fact is the
sole judge of the weight and credibility of the evidence. Margraves v. State, 34
S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency
review, we may not reevaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder. Dewberry v. State, 4 S.W.3d 735,
740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the evidence in
favor of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
          In a factual sufficiency review, we view all of the evidence in a neutral light,
and we set the verdict aside only if “proof of guilt is so obviously weak as to
undermine confidence in the jury's determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof.” Vodochodsky v.
State, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005) (internal quotation marks
omitted). In conducting such a review, we consider all of the evidence weighed by
the jury, comparing the evidence that tends to prove the existence of the elemental
fact in dispute to the evidence that tends to disprove it. Id. We may disagree with the
jury’s determination even if probative evidence exists to support the verdict, but we
should avoid substituting our judgment for that of the factfinder. Id. An opinion
addressing factual sufficiency must include a discussion of the most important and
relevant evidence that supports the appellant’s complaint on appeal. Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).
Credibility of Complainant’s Testimony Identifying Appellant
          A person commits the offense of aggravated robbery if, in the course of
committing theft he (1) intentionally or knowingly, or recklessly causes bodily injury
to another or (2) intentionally or knowingly threatens or places another in fear of
imminent bodily injury or death, and (3) uses or exhibits a deadly weapon. See Tex.
Pen. Code Ann. §§ 29.02(a)(1),(2), 29.03(a)(2) (Vernon 2003).
          Here, the evidence, viewed in the light most favorable to the verdict,
established the elements of the offense of aggravated robbery. Kaur testified that
appellant, while holding a gun, said “Money, money, give me money.” He later said,
“Gold, gold.” As Appellant struggled with Kaur, he choked her repeatedly and
stepped on her neck and back. Kaur’s physical condition corroborated her story. 
When appellant was arrested, he was driving a car that had been seen slowly circling
Kaur’s neighborhood and possessed a handgun, a pair of gloves, and a pack of tools
that included a pry bar. 
          As discussed previously, the jury is the sole judge of the credibility of the
witnesses at trial. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
Evidence is legally sufficient as long as it provides the requisite proof needed to
satisfy the elements of the offense charged. Bousquet v. State, 47 S.W.3d 131, 137
(Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). Accordingly, we hold that the
evidence was legally sufficient to sustain appellant’s conviction for the offense of
aggravated robbery.
          In support of his factual sufficiency argument, appellant reiterates that “the
complainant’s testimony incriminating the appellant was not credible.” Appellant
points out that Kaur could not identify the handgun found on appellant at the time of
his arrest, that she was never asked to identify the gloves found in appellant’s
pockets, and that she told the police dispatcher that her assailant was approximately
five feet four inches tall and weighed 120 pounds, when appellant is, in fact, larger.
          Kaur testified that the gun appellant used was silver with an orange handle. 
When she was shown State’s Exhibit 22, the gun recovered from appellant’s car, Kaur
testified that she did not recognize it. Appellant contends that this inability to
recognize the gun recovered from appellant’s car undermines Kaur’s credibility, such
that the evidence is factually insufficient. We disagree. Kaur’s inability to recognize
the gun could simply mean that the gun recovered from appellant’s car four days after
the robbery was not the same gun he used during the robbery.
          Appellant also argues that Kaur’s identification of him was not credible
because she said that he was about five feet four inches tall and weighed about 120
pounds, when, actually appellant was larger. However, Kaur admitted that she was
not very good at estimating height and weight, and that when she was describing
appellant to the operator she actually said, “120, 190, 160, I don’t know,” and that she
was just “throwing numbers out there” because she was frustrated by her inability to
estimate his height and weight for the operator. 
          The evidence also showed that Kaur was in the house with appellant for
approximately 45 minutes, and that for much of the time she was only inches away
from appellant. Part of the time, appellant was wearing an orange bandana, but he
later pulled it down or it fell down, giving Kaur a clear view of his face. Kaur
positively identified appellant as her assailant in a photo spread prepared by the
police. Appellant had a heavy accent, just as Kaur had described. When asked to
identify appellant at trial, Kaur pointed to appellant and said, “That’s actually
definitely him, yes.”
          Viewing the relevant evidence in a neutral light, favoring neither the State nor
appellant, and with appropriate deference to the jury’s credibility determinations, we
conclude that the evidence supporting the verdict is not too weak to support the jury’s
finding of guilt beyond a reasonable doubt and that the weight of the evidence
contrary to the verdict is not so strong that the State could not have met its burden
of proof on the issue of appellant’s identity as the perpetrator. Zuniga v. State, 144
S.W.2d 477, 484–85 (Tex. Crim. App. 2004). Accordingly, we hold that the evidence
on the issue of identity is factually sufficient to support appellant’s conviction for the
offense of aggravated robbery.
          We overrule points of error two and three.
Use of a Firearm
          The aggravated robbery indictment provided:
The duly organized Grand Jury of Harris County, Texas presents in the
District Court of Harris County, Texas, that in Harris County, Texas,
ANGEL LUIS CRUZ, hereinafter styled the Defendant, heretofore on
or about MARCH 11, 2004, did then and there unlawfully, while in the
course of committing theft of property owned by GURLEEN KAUR and
with intent to obtain and maintain control of the property, intentionally
and knowingly threaten and place GURLEEN KAUR in fear of
imminent bodily injury and death, and the Defendant did then and there
use and exhibit a deadly weapon, to–wit: A FIREARM.

          Appellant argues that the evidence is legally and factually insufficient to show
that the gun he used was a firearm. Specifically, appellant argues “that the
complainant’s testimony that she saw a ‘gun,’ without more elaboration, is
insufficient to establish that the appellant used a firearm.” Although a person
commits the first degree felony of aggravated robbery if he uses or exhibits a deadly
weapon in the commission of a robbery, when the State alleges unnecessary matter
that is descriptive of the essential elements of the crime, it must prove the descriptive
matter as alleged. See Gomez v. State, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985). 
Thus, when the State alleges in an indictment for aggravated robbery that the deadly
weapon used by the defendant was a firearm, as it did in this case, it is required to
prove use of a firearm beyond a reasonable doubt. See id.
          It is true that the term “gun” may be a much broader term than “firearm” and
may include such nonlethal instruments as BB guns, blow guns, pop guns, and grease
guns, see O’Briant v. State, 556 S.W.2d 333, 336 (Tex. Crim. App. 1977), courts
have also recognized, however, that the factfinder may draw reasonable inferences
and make reasonable deductions from the evidence as presented to it within the
context of the crime. See Goodin v. State, 750 S.W.2d 857, 859 (Tex. App.—Corpus
Christi 1988, pet. ref’d). Absent any specific indication to the contrary at trial, the
jury should be able to make the reasonable inference, from the victim’s testimony that
the “gun” was used in the commission of a crime, was, in fact, a firearm. See Wright
v. State, 591 S.W.2d 458 (Tex. Crim. App. 1979); Joseph v. State, 681 S.W.2d 738,
739 (Tex. App.—Houston [14th Dist.] 1984, no pet.); Riddick v. State, 624 S.W.2d
709, 711 (Tex. App.—Houston [14th Dist.] 1981, no pet.). Appellant’s threatening
the victim with the gun in itself suggests that it is a firearm rather than merely a gun
of the non-lethal variety described in O’Briant. See Riddick, 624 S.W.2d at 711. 
          In Davis v. State, 180 S.W.3d 277, 286 (Tex. App.—Texarkana 2005, no pet.),
the victim testified that the defendant pointed a gun at her and that she was afraid she
was going to die. The court of appeals held that this presented legally and factually
sufficient evidence for the jury to find that the weapon used was a firearm. Id.
          In this case, there is nothing in the record to suggest that the gun used by
appellant was a toy or anything other than a firearm. Kaur testified that appellant was
holding a very small silver gun with an orange shade of handle. Kaur believed that
the gun was real and was “thinking that appellant was going to shoot [and kill her]
right there.” She testified that she complied with all of appellant’s requests because
“[h]e had a gun in his hand.” At one point during her encounter with appellant, Kaur
actually managed to gain control of the gun. Even after handling and touching the
gun, Kaur was convinced that it was a firearm, as evidenced by her attempts to turn
off the safety on the gun and fire it.
          From this evidence, the jury could have concluded, beyond a reasonable doubt,
that the gun Kaur saw, and actually held in her own hands, was a firearm. 
Accordingly, the evidence is legally sufficient to show that the gun appellant used
was a firearm.
          Appellant points to no contrary evidence suggesting that the gun used was
anything other than a firearm. Viewing the relevant evidence in a neutral light,
favoring neither the State nor appellant, and with appropriate deference to the jury’s
credibility determinations, we conclude that the evidence supporting the jury’s
finding that the gun used was a firearm is not too weak to support the verdict; nor is
the weight of the evidence contrary to the finding so strong that the State could not
have met its burden of proof. See Zuniga, 144 S.W.3d at 484-85. Accordingly, we
hold that the evidence is factually sufficient to support the jury’s finding that the gun
appellant used was a firearm.
          Accordingly, we overrule points of error four and five.
CONCLUSION
          We affirm the judgment of the trial court.
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Alcala.

Publish. Tex. R. App. P. 47.2(b).