NO. 07-07-0348-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 17, 2008
_____

JULIAN D. RODRIGUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-408301; HONORABLE BRADLEY S. UNDERWOOD, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Julian D. Rodriguez, was convicted by a jury of four counts of aggravated robbery and the same jury assessed appellant's punishment at 75 years incarceration in the Institutional Division of the Texas Department of Criminal Justice. Through two issues, appellant contends the evidence was legally insufficient to support the conviction and the trial court committed reversible error in permitting a defense witness to claim her Fifth Amendment privilege against self-incrimination. We affirm.

Factual and Procedural Background

On September 20, 2004, Kimberly Peterson, Heather Weaver, Kelli Steger, and Bethany Seher had been at Arby's restaurant eating and studying together. About midnight, they exited the restaurant and were saying goodbye to each other when they were approached in the parking lot by a male they later identified as appellant. The man demanded their purses. When the assailant demanded their purses, some of the group thought he was kidding until they saw a gun held down by his side. The assailant collected the purses from the four women and fled. The victims retreated to the restaurant and called 911. Each of the victims later went to the police and gave a statement. Each described the assailant as a Hispanic male between 5' 4" to 5' 6" in height. None of the victims described any tattoos or other distinguishing marks on the assailant. Each victim affirmatively stated that the assailant was armed with a "gun."

The police, working on a "Crime Line" tip, put together a photographic lineup for the victims to view. Appellant was not a suspect in the first photo lineup. None of the victims identified any of the members of the first photo lineup as the assailant. Appellant was later arrested for forgery while attempting to negotiate a check using identification taken from Kimberly Peterson. Appellant subsequently pleaded guilty to the forgery charge. After learning of appellant's arrest for the forgery, the police put together a second photographic lineup and three of the victims identified appellant's photo as being the assailant. At trial, all four victims identified appellant as the assailant.

During the trial, appellant's counsel concentrated his cross-examination of the victims around the issue of the gun. Kimberly testified that what appellant was holding in his hand was held as you would expect a gun to be held and that appellant was waiving the gun around his belt, as if using it for emphasis. She testified that the gun appeared to be black and was not a revolver. It had a long barrel and there was no doubt in her mind it was a gun. On cross-examination, appellant's counsel elicited testimony that Kimberly did not know if the gun was operational or real. She testified that she never heard any metallic click or noise and that she did not know much about guns. Each of the other victims identified the item as a gun, yet all admitted they did not know if the gun was operational or real. Further, each professed not to have much experience with guns.

After the State rested its case-in-chief, appellant called Catherine Lucero as a witness. Prior to her testimony, a question about the witnesses's Fifth Amendment privilege was raised. After inquiry by the trial court, the court appointed an attorney to represent her. After discussing the matter with the attorney, the witness invoked her Fifth Amendment privilege against self-incrimination and the trial court dismissed the witness without testifying.

The jury convicted appellant and assessed a term of confinement of 75 years in prison. This appeal followed.

Legal Sufficiency

Appellant's first contention is that the evidence is legally insufficient to prove that appellant exhibited a firearm during the commission of the robbery. In assessing the legal

3

sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

Appellant correctly points out that the offense of aggravated robbery is committed when a person uses or exhibits a deadly weapon during the commission of a robbery. See TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2003).[1] A deadly weapon is defined as a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury. See § 1.07(a)(17)(A).

The indictment in this case alleges, in pertinent part, that appellant,

did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain and maintain control of said property, threaten and place KIMBERLY PETERSON in fear of imminent bodily injury, and the defendant did then and there use and exhibit a deadly weapon, to-wit: a firearm, that in the manner of its use and intended use was capable of causing death and serious bodily injury.

---

[1] Further reference to the Texas Penal Code will be by reference to "§ ___."

4

The indictment contains three other counts, one for each other victim, similarly worded. Appellant's contention is that the proof at trial was that a "gun" was used, but there is no evidence in the record that the instrument used was a "firearm." Further, "firearm" is defined in the Penal Code as "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." See § 46.01(3). According to appellant, since the State indicted him using the unnecessary descriptive term "firearm," the State had to prove the descriptive matters as alleged. See Gomez v. State, 685 S.W.2d 333, 336 (Tex.Crim.App. 1985) (en banc). In the final analysis, appellant's contention is that the testimony of the four victims that appellant used a "gun" is not legally sufficient to prove "firearm" as alleged in the indictment.

This issue has been decided against appellant's theory in a number of reported cases. In one instance, the testimony was that the defendant used a "gun," "revolver," and a "pistol" at various places in the record. Wright v. State, 591 S.W.2d 458, 459 (Tex.Crim.App. 1979). There, the issue was that the witnesses did not describe the instrument as a "firearm," which is a deadly weapon *per se.* Id. The court disagreed, saying, "Testimony using any of the terms 'gun,' 'pistol,' or 'revolver' is sufficient to authorize the jury to find that a deadly weapon was used." Id. In the Gomez case, the indictment, as here, alleged the defendant used a deadly weapon, "namely a firearm." Gomez, 685 S.W.2d at 336. As in the case before the court, there was no weapon produced at trial and the witness identified the instrument as a "gun" or "revolver." Id. Against a sufficiency of the evidence challenge, the Court in Gomez found the testimony

5

regarding the deadly weapon sufficient to sustain the verdict of guilty.  Id.  In Cruz, the issue before the court was whether testimony that the defendant had used a "gun" was legally sufficient to support a conviction alleging a "deadly weapon, to-wit: A FIREARM." Cruz v. State, 238 S.W.3d 381, 388 (Tex.App.–Houston [1st Dist.] 2006, pet. ref'd).  In discussing the facts of the case, the court pointed out that there was nothing in the testimony to suggest that the gun used was a toy or anything other than a firearm.  Id. at 389.  Further, the court pointed out that the victim believed the gun was real and that if she did not comply with the appellant she was going to get shot.  Id.  In Cruz, the court found the evidence to be legally sufficient.  Id.  Other cases have found that testimony about a "gun" was sufficient to prove "firearm."  Price v. State, 227 S.W.3d 264, 267 (Tex.App.–Houston [1st Dist.] 2007, pet. dism'd); Edwards v. State, 10 S.W.3d 699, 702 (Tex.App.–Houston [14th Dist.] 1999, pet. dism'd).

The testimony demonstrated that each victim saw a weapon that they described as a gun.  Further, each victim testified that they feared for their safety as appellant pointed the "gun" at them and stated, he was not "f—ing kidding."  Under the facts, as presented, the jury was allowed to make reasonable inferences and deductions that the "gun" was, in fact, a firearm.  Davis v. State, 180 S.W.3d 277, 286 (Tex.App.–Texarkana 2005, no pet.).  When viewing the evidence in the light most favorable to the verdict, we cannot say that the jury acted irrationally in finding this essential element of the offense against appellant beyond a reasonable doubt.  Accordingly appellant's first contention is overruled.

Fifth Amendment Privilege of Appellant's Witness

Appellant next contends that the trial court committed reversible error when the court granted a witness, Lucero, called by appellant to claim her Fifth Amendment privilege against testifying rather than allowing appellant to offer limited testimony about issues that appellant claimed would not have incriminated the witness. A defendant has the right to present evidence to the jury so that they may determine what the operative facts are. See U.S. CONST. amend. VI. See also TEX. CONST. art. I, § 10. However, a person's constitutional privilege against self-incrimination overrides a defendant's right to compulsory process. Boler v. State, 177 S.W.3d 366, 371 (Tex.App.–Houston [1st Dist.] 2005, pet. ref'd) (citing Bridge v. State, 726 S.W.2d 558, 567 (Tex.Crim.App. 1986)). What we, as the reviewing court, must decide is whether Lucero reasonably believed that answering the questions of appellant's trial attorney would present a reasonable danger of self-incrimination. Chandler v. State, 744 S.W.2d 341, 342 (Tex.App.–Austin 1988, no pet.).

After the State rested its case-in-chief, appellant called Lucero to testify. After a colloquy with the attorneys, the trial court allowed the witness to be called and sworn. The court inquired of Lucero whether she understood that her testimony might incriminate her and subject her to prosecution. Upon Lucero answering in the affirmative, the trial court further inquired whether or not she was represented by an attorney. Upon being informed she was not represented by counsel and that she could not afford an attorney, the trial court appointed counsel to discuss her testimony and her right against self-incrimination. After a short recess, during which appointed counsel visited with Lucero about her

proposed testimony, the trial court inquired about whether Lucero intended to invoke her Fifth Amendment privilege against self-incrimination. Appointed counsel answered that Lucero intended to claim her right against self-incrimination. The trial court then stated that he could not allow the witness to be placed on the stand with the knowledge that she intended to claim her right against self-incrimination.

The trial court did allow appellant's counsel to make a proffer of what he expected Lucero to testify to if she had been allowed to testify. Through the proffer, appellant sought to show:

1. That, at the time of the incident in question, Lucero was in a relationship with appellant and had three children with appellant;

2. That she knew appellant's routine at night and he was not out at night during the operative time in question;

3. That she never saw him in possession of a firearm;

4. That he had numerous tattoos on his neck and arms;

5. That appellant's tattoos were definitely visible to anyone;

6. That Lucero was addicted to drugs at the time of the forgery, that appellant was arrested for and later pleaded guilty to;

7. That Lucero gave the check to appellant that was the basis for his arrest for forgery and was, in fact, with him at the time of the arrest; and

8. That she had acquired the check from another individual and appellant had no knowledge of how she obtained the check.

It is clear to the Court that most of the testimony of Lucero would have incriminated her in the forgery offense. What we can ascertain from a review of the proffer by appellant is that Lucero could have reasonably believed that her testimony would, in fact, subject her

8

to criminal prosecution.  Id.  Further, the trial court was correct in not allowing appellant to place Lucero on the witness stand with the knowledge that she intended to assert her Fifth Amendment privilege.  Bridge, 726 S.W.2d at 567.

Finally, it must be observed that there is no claim that there were not other family members or associates who could have testified about appellant's tattoos and work habits. In fact, appellant took the witness stand and testified about the tattoos and showed them to the jury.

The trial court's decision to allow Lucero to claim her Fifth Amendment privilege is supported by the record.  Accordingly, appellant's contention is overruled.

### Conclusion

Having overruled appellant's issues, the trial court judgment is affirmed.

Mackey K. Hancock
Justice

Do not publish.

9