Opinion issued November 12, 2009






 


 

 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00087-CR

____________


TEDDY OGILVIE NORMAN, Appellant


v.


THE STATE OF TEXAS, Appellee






On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 1057182







MEMORANDUM OPINION

 A jury convicted appellant, Teddy Ogilvie Norman, of sexual assault of a child
and assessed punishment at four years in prison. See Act of May 29, 2005, 79th Leg.,
R.S., ch. 268, § 4.02, 2005 Tex. Gen. Laws 713 (amended 2009) (current version at
Tex. Penal Code Ann. § 22.011 (Vernon Supp. 2009)). (1) Appellant contends that
1) the trial court erred in admitting evidence of other crimes, wrongs, or acts, 2) the
trial court erred in overruling appellant's motion for mistrial, and 3) evidence was
factually insufficient to support his conviction. We affirm.

Background


 At the time of the incident, November 2005, appellant lived two doors down
from the complainant, V.M. At that time, V.M. was fourteen years old and appellant
was twenty-six years old. V.M. did not know appellant well, but she was friends with
appellant's fourteen-year-old cousin, Timmy, who lived in the same household as
appellant. V.M.'s household also included her extended family. V.M.'s cousin,
Antonio Rodriguez (age 24), and aunt, Esther Hernandez (age 26), were friends with
appellant. V.M. would occasionally see appellant and "say hi" when he was over at
her home visiting her cousin and aunt. Similarly, V.M. had been over to appellant's
home to visit his cousin, when appellant "passed by." V.M. described her
relationship with appellant as "more of a hi-and-bye" relationship.

 In the fall of 2005, V.M. met and started dating a twenty-year-old male named
Wilmer. V.M. sneaked out of her house at night on several occasions to spend time
with Wilmer because he was older and her parents would not approve. V.M. noticed
that appellant saw her leaving her house on one of the occasions that she sneaked out
of her house to spend time with her boyfriend.

 On the afternoon of November 4, 2005, V.M. got off her school bus and saw
appellant and his cousin standing outside their home. Appellant called V.M.'s name
and said he wanted to talk to her. V.M. dropped off her school bag at her house and
told her father where she was going. Once back outside, appellant told V.M. that her
father had approached him wanting to speak with him. Appellant indicated that he
thought it was probably about her sneaking out. V.M. told him "[n]ot to say
anything," and appellant agreed. Then, appellant invited V.M. to come inside. Once
inside, appellant offered V.M. wine to drink. V.M. testified that she, appellant, and
appellant's cousin sat together and talked. At first appellant asked V.M. about how
she was doing in school, then the conversation switched to her aunt and cousin. The
things appellant was saying about her aunt and cousin made V.M. feel uncomfortable. 
V.M. told appellant she needed to go home and asked him for gum or candy to hide
the smell of wine on her breath. Appellant went upstairs and then returned
downstairs. Appellant told V.M. that he had candy upstairs and instructed her to
follow him, pulling her towards the stairs. Appellant's cousin remained downstairs. 
Once upstairs, appellant opened the door to a room, and V.M. stood in the hallway. 
V.M. testified that appellant "pulled[ed] out a Wal-Mart bag full of candy" and placed
it on the bed, which seemed strange to her at the time. Appellant told V.M. to come
in and select a piece of candy. As V.M. looked through the bag of candy, appellant
shut the door. Appellant returned to the conversation about V.M.'s father wanting
to talk to him about something. Again, V.M. told him not to say anything about her
boyfriend or sneaking out. V.M. testified that appellant responded by saying, "If I'm
going to do that favor for you[,] what are you going to do for me?" V.M. said that she
offered to "hook him up with a friend" that could sell him drugs or "[h]ook him up
with a friend as in boyfriend and girlfriend." Appellant was not interested and instead
suggested that V.M. allow him to perform oral sex on her. V.M. refused and left the
house.

 V.M. told her boyfriend and her friend about what happened that afternoon. 
However, she testified that she did not tell her parents that afternoon because she did
not want her parents to find out about her boyfriend or that she had been sneaking
out.

 One week later, in the early hours of Friday, November 11, 2005, V.M. saw
appellant again. Around 1:00 a.m., V.M. awoke to the sound of something hitting her
bedroom window. She looked out her window and could see someone standing in the
driveway. She could not see the person clearly but assumed it was one of her friends
or her boyfriend trying to get her attention. She went downstairs and recognized it
was appellant.

 The windows in V.M.'s kitchen were open with just the screen covering them
because her father had painted the inside of the house that day. V.M. went to the
screen and asked appellant several times, "What are you doing here?" V.M. testified
that she kept thinking she needed to "get this guy out of here." Despite the way their
last conversation ended, V.M. answered the door because she was afraid that
appellant would tell her parents about her boyfriend and that she had been sneaking
out of the house at night. So she slowly opened the kitchen door so as to not make
any noise and stepped outside onto the doorstep. Once outside, V.M. testified
appellant pulled her by the elbow. V.M. pushed to try to get away. V.M. testified
appellant was not acting as he normally does; he was "a little bit more tougher." 
V.M. struggled to get away, but eventually fell to the ground. Appellant crouched
over her, and he became more aggressive. V.M. continued to fight to get away, but
appellant held her down. V.M. testified that appellant's breath "smelled of beer." 
Appellant pulled V.M.'s shirt up and grabbed her breasts. V.M. pulled her shirt back
down and continued to struggle to get away. While V.M. was pulling her shirt back
down, she noticed that appellant "was doing something to his shorts." Then, V.M.
testified that appellant started "messing with [her] pants." He was not able to pull her
pants down all the way, but V.M. testified that he pulled them down to "where [her]
thigh is." V.M. testified that appellant reached into her underwear and touched her
vagina. V.M. testified that eventually she stopped fighting back because she "wanted
to get it done with." She testified that she was crying, but she tried to remain silent
because she did not want her parents to find out. V.M. testified that appellant put his
fingers inside her. V.M. said she tried to press her thighs together and tried to cross
her legs to prevent appellant from touching her. Finally, with a retaliatory tone in his
voice, appellant said, "I'm done," then stood up, and walked away. V.M. told her
school counselor the next morning school, and a police report was filed that day.

 When appellant gave a statement to police shortly after the incident, he said he
spent the evening at his girlfriend's house and then came home and watched
television until he fell asleep shortly after 1:00 a.m. At trial, appellant offered alibi
witnesses that testified to events appellant never mentioned in his written statement
to police. Appellant's mother testified at trial that she and appellant were
shampooing the carpets from 1:00 a.m. until 3:00 a.m. Appellant testified at trial that
he mentioned shampooing the carpets when he spoke with police officers shortly after
the incident, but that fact was not included in the written statement. Appellant also
offered the alibi testimony of his cousin, who testified that appellant was watching
television with him up until the time appellant started cleaning the carpets with his
mother. That fact was also left out of appellant's written statement taken shortly after
the incident.

A. Evidence of Other Crimes, Wrongs, or Acts

 In his first issue, appellant argues that the court erred in admitting evidence of
other crimes, wrongs, or acts pursuant to Texas Rule of Evidence 404(b). 
Specifically, appellant points to testimony of V.M. that appellant pulled her to follow
him upstairs to his bedroom, presented her with candy, and suggested that she allow
him to perform sexual acts on her in exchange for his agreement not to tell her dad
about her boyfriend. Additionally, appellant points to V.M.'s testimony that she
offered to get him illegal drugs, arguing that this testimony suggests appellant is a
drug user. Because the testimony was offered and objected to at different times, we
address the two separately. 

 1. Testimony Regarding Incident that Occurred Week Prior to Offense


 The first portion of testimony that appellant points to is V.M.'s testimony that
appellant pulled her to follow him upstairs to his bedroom, presented her with candy,
and suggested that she allow him to perform sexual acts on her in exchange for his
agreement not to tell her dad about her boyfriend. On appeal, appellant argues that
the admission of this testimony was an abuse of discretion because it is not admissible
under Texas Rule of Evidence 404(b). (2) However, because appellant did not preserve
error on 404(b) grounds, we cannot address the merits of this issue.

 Appellant made an objection during the State's opening statement and, at that
time, presented his motion in limine regarding extraneous offenses, among other
things. (3) The trial court addressed the motion outside the presence of the jury. During
the discussion, appellant's counsel argued: "I received notice about this. However,
I'm saying that this thing is not an extraneous offense. There is no relationship
between that and the actual case that we're here for today." The court acknowledged
the State's position that the evidence was relevant to explain to the jury the prior
relationship and why V.M. answered the door. At that point, appellant's counsel
abandoned his argument that the incident was an extraneous offense. Then,
appellant's counsel clarified that his objection was that it was "more prejudicial than
probative." Appellant argued that the testimony regarding the occurrence one week
prior to the offense was not relevant because it was not true. Essentially, appellant
argued that because the testimony would be contradicted by appellant's own
testimony, it was not true and therefore more prejudicial than probative. The court
responded that credibility of the witness was something for appellant to address in
cross-examination. The court overruled appellant's objection and found the
testimony more probative than prejudicial. 

 The court did not expressly state how it would rule on the motion in limine. 
However, an order was signed by the judge with the notation "Granted in Part --
Denied in Part as per record." The court allowed the prosecutor's opening statement
to go into events occurring approximately a week before the incident to show a past
relationship between V.M. and appellant. Appellant did not ask for a running
objection at the time the court addressed the motion in limine and overruled
appellant's objection. 

 During V.M.'s testimony, she testified, without objection, that appellant
"grabbed [her]" and "pulled [her]" upstairs, presented her with a "bag full of candy,"
and returned to the conversation about her dad wanting to talk to him. Ms. Jones,
trial counsel for appellant, finally objected during the following testimony:

 (V.M.): I tell him not to say anything and then he tells me, I wasn't,
but what --


 (Ms. Jones): Objection, Your Honor, hearsay.


 THE COURT: Do you want to approach the bench, please.


 (Reported conference at the bench)


 THE COURT: I made a previous ruling on this, haven't I?

 . . .


 THE COURT: Wasn't that your objection or motion in limine? I mean, I
can give you a running objection is what I'm saying. 
Haven't I made rulings on these statements?

 . . .


 (Ms. Jones): Well, I would like a running objection from here on out
that, you know, just on the record.


 THE COURT: Why don't you clarify what it is you're asking me, for
you're record, what you're asking me.


 (Ms. Jones): Okay, Judge. To rule on it on all these statements that
she's saying over and over again are hearsay statements.


 (Emphasis added.) 

 The court granted the running objection.

 a) The Law: Preservation of Error

 To preserve an issue for appellate review, the trial record must reflect that
appellant made a timely objection stating the specific legal basis. Tex. R. App. P.
33.1(a)(1)(A); Tex. R. Evid. 103(a)(1); Layton v. State, 280 S.W.3d 235, 238-39
(Tex. Crim. App. 2009). An objection stating one legal theory may not be used to
support a different legal theory on appeal. See Medina v. State, 7 S.W.3d 633, 643
(Tex. Crim. App. 1999) (holding relevancy objection did not preserve error
concerning Rule 404 extraneous offense claim); Camacho v. State, 864 S.W.2d 524,
533 (Tex. Crim. App. 1993) (holding hearsay and relevancy objections did not
address correct evidentiary basis for exclusion of extraneous offense testimony). 

 b) Analysis

 We first note that V.M.'s testimony regarding what appellant said to her is not
hearsay. Tex. R. Evid. 801(e)(2) (statement offered against party that is party's own
statement is not hearsay). On appeal, appellant argues that the testimony was
inadmissible under extraneous evidence (Texas Rule of Evidence 404(b)) grounds.
Appellant's hearsay objection does not preserve the issue for appellate review on a
different theory. See Medina, 7 S.W.3d at 643 (holding relevancy objection did not
preserve error concerning Rule 404 extraneous offense claim); Camacho, 864 S.W.2d
at 533 (holding hearsay and relevancy objections did not address correct evidentiary
basis for exclusion of extraneous offense testimony). Accordingly, we need not
address the merits of appellant's argument as to this testimony.

 2. Testimony that V.M. Offered Appellant Drugs

 Next, we address appellant's argument regarding V.M.'s testimony that she
offered to provide appellant with drugs. Following the discussion outside the
presence of the jury above, the jury was brought back into the courtroom and V.M.
picked up where she left off with her testimony. The transcript reflects the following:

 (Prosecutor): When you asked him again not to tell your parents, what's
the next thing, what does he say? What's his response to
that?


 (V.M.): He told me, If I'm going to do that favor for you what are
you going to do for me?


 (Prosecutor): Okay. Do you offer to do anything for him?


 (V.M.): Yeah.


 (Prosecutor): What do you offer to do for him?


 (V.M.): I told him if I could hook him up with a friend that was --
that has to deal with selling drugs.


 (Prosecutor): Okay. What else?


 (V.M.): Hook him up with a friend as in boyfriend and girlfriend.


 THE COURT: Let me interrupt you just a minute. I need to excuse the
jury for just a few minutes. Do not discuss the case, we'll
being back in touch shortly.

 

 A discussion was held outside the presence of the jury between the attorneys 
and the court. The court explained that it stopped the testimony because at the time
the court ruled on the motion in limine, the court was not aware of any anticipated
testimony relating to drugs. The prosecutor then stated that this was a statement V.M.
had made to appellant, not a statement by appellant. The prosecutor also offered to
clarify in front of the jury that appellant never accepted drugs from V.M. Finally, at
that point, appellant voiced an objection to the testimony, arguing that nothing
involving drugs had been disclosed previously and that it was highly prejudicial
because it shows the jury "he is obviously . . . he's just a drug addict." 

 Outside the presence of the jury, the court questioned V.M. relating to her
knowledge of appellant's involvement with illegal drugs. V.M. responded that
appellant told her "[t]hat he does sell drugs." The prosecutor informed the court that
he had previously instructed V.M. not to testify to anything appellant had said to her
about dealing or using drugs. The court ruled that it would allow appellant to cross
examine the witness and also admonished V.M., not to "go into any statements made
by the defendant about drugs." 

 a) The Law: Preservation of Error

 To preserve an issue for appellate review, the trial record must reflect that
appellant made a timely, specific objection and obtained a ruling. Tex. R. App. P.
331(a)(1)(A); Tex. R. Evid. 103(a)(1); Layton, 280 S.W.3d at 238-39. In order for
the objection to be "timely," it must be made at the first opportunity or as soon as the
basis of the objection becomes apparent. Cruz v. State, 238 S.W.3d 381, 385 (Tex.
App.--Houston [1st Dist.] 2006, pet. ref'd) (citing Johnson v. State, 803 S.W.2d 272,
291 (Tex. Crim. App. 1990)). In addition to the objection, the complaining party
must obtain an adverse ruling on the record or object to the trial court's refusal to rule
on the objection. Tex. R. App. P. 33.1(a); Thierry v. State, 288 S.W.3d 80, 85 (Tex.
App.--Houston [1st Dist.] 2009, pet. ref'd); Cockrell v. State, 933 S.W.2d 73, 89
(Tex. Crim. App. 1996). 

 b) Analysis

 First, the objection was not timely. Following the complained-of testimony,
the prosecutor asked V.M. another question and she answered before any objection
was lodged. Even if the testimony was unexpected, as argued by appellant, the proper
time for the objection was directly after the statement was made. Thus, the objection
was untimely and did not preserve the error for appellate review. See Cruz, 238
S.W.3d at 385 (holding in order for objection to be "timely," it must be made at first
opportunity or as soon as the basis of objection becomes apparent). 

 Further, appellant never obtained an adverse ruling on his objection. After
appellant made the objection, the court discussed the issue but never ruled on the
objection. Appellant did not object to the trial court's failure to make a ruling on the
objection. Because appellant failed to get an adverse ruling on his objection, the
issue is not preserved for appellate review. See Thierry, 288 S.W.3d at 85.

 We overrule appellant's first issue.

B. Motion for New Trial

 In his second issue, appellant argues the trial court abused its discretion by
denying his motion for mistrial after V.M. alluded to other crimes, wrongs or acts of
appellant. Specifically, appellant argues that V.M. "unexpectedly told the jury that
she offered to supply [appellant] with illegal drugs." 

 1. The Law

 "An appellant who moves for a mistrial without first requesting a less drastic
alternative forfeits appellate review of that class of events that could have been cured
by the lesser remedy." Ocon v. State, 284 S.W.3d 880, 886-87 (Tex. Crim. App.
2009) (citing Barnett v. State, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)). An
appellant is not required to progress sequentially from least to most serious remedy;
however we will not reverse a trial court's judgment when a lesser, un-requested
alternative could have cured the problem. Id. at 887 (citing Young v. State, 137
S.W.3d 65, 70 (Tex. Crim. App. 2004)). A witness's inadvertent reference to an
extraneous offense is generally cured by a prompt instruction to disregard. Young v.
State, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009). 

 2. Analysis

 V.M. did not testify that appellant used or sold drugs. Rather, V.M. testified
that appellant refused her offer to provide him with drugs. Appellant objected to the
testimony, but the trial court did not rule on the objection. Appellant did not request
an instruction to disregard the evidence. Appellant, however, did move for a mistrial,
which the trial court denied. 

 We conclude the less drastic alternative of an instruction to disregard the
evidence could have cured the admission of the evidence. See Ocon, 284 S.W.3d at
886-87. Therefore, appellant has forfeited his appellate review for failing to request
an instruction to disregard. See id.

 We overrule appellant's second issue.

C. Factual Sufficiency

 In his third issue, appellant argues that the evidence adduced at trial was
factually insufficient to support his conviction. Specifically, appellant argues his 
alibi and character witnesses conclusively established he did not commit the offense. 

 1. Standard of Review

 In our factual-sufficiency review, we view all of the evidence in a neutral light. 
Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will set aside the
verdict for factual insufficiency only if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or (2) the proof of guilt is against the great
weight and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1,11 (Tex.
Crim. App. 2000). Under the first prong of Johnson, we cannot conclude that a
conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum
of evidence admitted, we would have voted to acquit had we been on the jury. 
Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second
prong of Johnson, we also cannot declare that a conflict in the evidence justifies a
new trial simply because we disagree with the jury's resolution of that conflict. Id. 
Before finding that evidence is factually insufficient to support a verdict under the
second prong of Johnson, we must be able to say, with some objective basis in the
record, that the great weight and preponderance of the evidence contradicts the jury's
verdict. Id. In our factual-sufficiency review, we must also discuss the evidence that,
according to appellant, most undermines the jury's verdict. Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).

 The fact-finder alone determines the weight to be given to contradictory
testimonial evidence because that determination depends on the fact-finder's
evaluation of credibility and demeanor. Cain, 958 S.W.2d at 408-09. As the
determiner of the credibility of the witnesses, the fact-finder may choose to believe
all, some, or none of the testimony presented. Id. at 407 n.5; see also Lancon v.
State, 253 S.W.3d 699, 705-07 (Tex. Crim. App. 2008). 

 2. The Law

 In order to convict appellant of sexual assault of a child, the State was required
to prove beyond a reasonable doubt that appellant intentionally or knowingly caused
the penetration of the sexual organ of a child by any means. See Act of May 29,
2005, 79th Leg., R.S., ch. 268, § 4.02, 2005 Tex. Gen. Laws 713 (amended 2009)
(current version at Tex. Penal Code Ann. § 22.011 (Vernon Supp. 2009)). A
"child" is a person younger than 17 years of age. See id..

 The testimony of a child victim alone is sufficient to support a conviction for
sexual assault of a child. Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); 
Lee v. State, 176 S.W.3d 452, 458 (Tex. App.--Houston [1st Dist.] 2004), aff'd, 206
S.W.3d 620 (Tex. Crim. App. 2006); see also Garcia v. State, 563 S.W.2d 925, 928
(Tex. Crim. App. 1978) (holding testimony of sexual victim alone is sufficient
evidence of penetration). 

 3. Analysis

 Evidence was presented at trial that V.M. was fourteen years old at the time of
the offense. V.M. testified that appellant forced her to the ground and held her down
while he penetrated her vagina with his fingers. 

 Appellant's mother testified at trial that she and appellant were shampooing the
carpets from 1:00 a.m. until 3:00 a.m the night of the offense. Appellant also offered
the alibi testimony of his cousin who testified that appellant was watching television
with him up until the time appellant started cleaning the carpets with his mother. In
appellant's written statement taken by police shortly after the incident, appellant
provided an alibi that he was watching television but failed to mention he was with
his cousin or his mother. The jury could have found it suspicious that appellant did
not include these potential alibi witnesses in his initial statement to police.

 Appellant points to his testimony and testimony of his alibi witnesses, arguing
that we should believe his witnesses over the testimony of the complainant. This
argument ignores the fact that a reviewing court must be careful to avoid substituting
its judgment for that of the jury, particularly in matters of credibility. See Cain, 958
S.W.2d at 408-09. Appellate courts should afford almost complete deference to a
jury's decision when that decision is based on the evaluation of credibility. Lancon,
253 S.W.3d at 705. The jury is in the best position to judge the credibility of a
witness because it is present to hear the testimony, as opposed to an appellate court
who relies on the cold record. Id. The jury may choose to believe some testimony
and disbelieve other testimony. Id. at 707. 

 The jury could have reasonably found appellant's witnesses to not be credible. 
Further, the testimony of V.M. alone is sufficient to support the finding of guilt. See
Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005). 

 Weighed in a neutral light, the evidence is not so weak that the verdict is
clearly wrong and unjust. Laster v. State, 275 S.W.3d 512, 518 (Tex. Crim. App.
2009). Also, there is no objective basis in the record to conclude that the great weight
and preponderance of the evidence contradicts the jury's verdict. Watson, 204 S.W.3d
at 417. We hold the evidence is factually sufficient to support the conviction for
sexual assault of a child.

 We overrule appellant's third issue. 

Conclusion

 We affirm the judgment of the trial court. 

 

 

 George C. Hanks, Jr.

 Justice


Panel consists of Justices Keyes, Alcala and Hanks.

Do not publish. See Tex. R. App. P. 47.2(b). 
1. The 81st Texas Legislature amended Texas Penal Code Section 22.011, effective September
1, 2009. However, the amendments do not affect the disposition of this case. 
2. Texas Rule of Evidence 404(b) provides: "Evidence of other crimes, wrongs or acts is not
admissible to prove the character of a person in order to show action in conformity therewith.
It may, however, be admissible for other purposes, such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided
that upon timely request by the accused in a criminal case, reasonable notice is given in
advance of trial of intent to introduce in the State's case-in-chief such evidence other than
that arising in the same transaction." Tex. R. Evid. 404(b).
3. Specifically, appellant's motion in limine addressed testimony regarding appellant's
immigration status, any alleged prior convictions without the supporting judgment and
sentence, and extraneous offenses.