**Opinion issued April 10, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-12-00555-CR**

————————————

**BOBBY DEAN JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1303052**

---

**MEMORANDUM OPINION**

Appellant, Bobby Dean Jones, was charged by indictment with capital murder.[1] The State did not seek the death penalty. Appellant pleaded not guilty. The jury found him guilty, and Appellant was automatically sentenced to

---

[1]    *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2013).

confinement for life.[2]  On appeal, Appellant argues in his first issue that the trial court abused its discretion by overruling an objection to the State's eliciting victim impact testimony during the guilt-innocence phase and in his other three issues that he received ineffective assistance of counsel when his counsel failed to object to the remainder of the victim impact testimony.

We affirm.

## Background

The complainant, Donald Frye, was found dead on his driveway at 1:00 a.m. on April 12, 2011 in an unincorporated part of Harris County known locally as Atascocita.  He died of a gunshot to the chest.  Harris County constables found a fingerprint on the complainant's car that matched a fingerprint of Giovanni Mora.  The constables located Mora and placed him under arrest.  Mora ultimately identified Appellant and Bruce Taylor as being involved in the murder.

Tyler Crutcher, a friend of Appellant's, testified that, on the evening before the incident, Appellant, Mora, and Taylor were at Crutcher's apartment.  Mora announced, "Let's go hit a lick," which means to commit a crime.  Appellant, Mora, and Taylor then left.  They returned around 6:00 the next morning.  Crutcher saw Mora rubbing down a gun.

---

[2]     *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (Vernon Supp. 2013).

Steven Wilson, a friend of Appellant's and Mora's, testified that he heard about Mora's arrest and called Appellant. Appellant told Wilson that he and Mora had gone to a man's house in Atascocita, and the man started wrestling with Mora. The man then approached Appellant, and Appellant "pulled the trigger."

When Shannon Carr, one of Mora's brothers, learned of Mora's arrest, he began trying to find out what happened. He learned about Appellant's involvement and sought him out. Cedrick Clark, one of Mora's cousins, obtained Appellant's phone number and called him. Appellant told Clark that he and Mora went to rob someone "and it went wrong." Clark asked to meet in person, and Appellant agreed, telling Clark where he was.

Shannon Carr and Clark drove to the location with James Carr, another brother of Mora's. When they arrived, Clark got out of the car, and Appellant approached and started talking with Clark. While Clark and Appellant were talking, Shannon Carr decided to start recording the conversation. The recording was admitted into evidence. In the recording, Appellant told Clark that he shot the man in Atascocita.

Raymond Dixon, a friend of Appellant's and Mora's, testified that, in early April 2011, he saw Appellant in a car with a pistol in his lap. Dixon offered to buy the gun, but Appellant declined. A day or two after the incident, Appellant asked Dixon if he was still interested in buying the gun and sold it to Dixon. A forensic

3

test determined that the bullet found near the scene of the crime came from the gun Appellant sold to Dixon.

Once he was arrested, Appellant gave a statement. In his statement, he acknowledged going with Mora and Taylor to rob a man. He claimed, however, that he remained in the car. Appellant stated that Mora was the only one to get out of the car, that Mora talked with the man in the man's car for five to ten minutes, and that Mora shot him after the two got in a fight.

### Victim Impact Testimony

All of Appellant's issues on appeal concern the testimony of Elizabeth Frye, the complainant's wife. During the guilt-innocence phase of the trial, Frye testified extensively about her husband's kind and outgoing nature as well as the way in which he cared for his family. Appellant complains that much of this testimony was victim impact evidence, which is not relevant in a guilt-innocence determination. *See Love v. State*, 199 S.W.3d 447, 456–57 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Initially, Appellant's attorney did not object to Frye's victim impact testimony. However, Appellant's attorney raised an objection to the victim impact testimony later, in the middle of Frye's testimony. The trial court overruled this objection. In his first issue, Appellant argues that the trial court abused its discretion by overruling his objection to the victim impact testimony. In his remaining issues, Appellant argues that he received ineffective assistance of

4

counsel because of his counsel's failure to object to the earlier portions of what he identifies as victim impact testimony.

To obtain a reversal based on the erroneous admission of evidence, the error must have affected an Appellant's substantial rights. *Kibble v. State*, 340 S.W.3d 14, 20 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). That is, it must have had "a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Similarly, in order to obtain a reversal for ineffective assistance of counsel, Appellant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005).

When an ineffective assistance of counsel claim concerns the failure to object to the admission of evidence, the Appellant must establish both that the evidence was inadmissible and that its admission probably affected the outcome of the trial. *Hollis v. State*, 219 S.W.3d 446, 463 (Tex. App.—Austin 2007, no pet.); *Cooper v. State*, 707 S.W.2d 686, 688 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd). In this situation, the appellant must show then that, if the evidence had been objected to, its denial would have been reversible error.

Accordingly, if the complained-of testimony taken as a whole—that is, considering the objected-to evidence and the unobjected-to evidence together—does not constitute harmful error, then all four of Appellant's issues regarding the admission of victim impact testimony and the claims of ineffective assistance of counsel must fail. For the reasons identified below, we conclude that is the proper result in this appeal.

## A. Standard of Review

### 1. Admission of Evidence

Whether erroneous admission of evidence constitutes reversible error is governed by Texas Rule of Appellate Procedure 44.2(b), which applies to non-constitutional errors in criminal cases. *See* TEX. R. APP. P. 44.2(b); *Cruz v. State*, 238 S.W.3d 381, 386 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). The judgment will be reversed only if the error affected an Appellant's substantial rights. *See Kibble*, 340 S.W.3d at 20. An error affects an Appellant's substantial rights "when the error has a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citing *King*, 953 S.W.2d at 271). An error that did not influence the jury or had but a slight effect on the jury is not reversible. *McRae v. State*, 152 S.W.3d 739, 744 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (citing *Solomon v. State,* 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). In making the determination of whether Appellant's substantial rights were affected,

6

the factors we consider include the nature of evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Id.* (citing *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003)). We also consider whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert. *Id.*

## 2. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. *See* U.S. CONST. amend. VI. To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068; *Andrews*, 159 S.W.3d at 101–02. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Andrews*, 159 S.W.3d at 101. "A 'reasonable probability' is one sufficient to undermine the confidence in the outcome." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

## B.    Analysis

Victim impact evidence consists of "two distinct, but related, types [of evidence]: victim character evidence and victim impact evidence." *Salazar v. State*, 90 S.W.3d 330, 335 (Tex. Crim. App. 2002).  Victim character evidence "is designed to give the jury 'a quick glimpse of the life that the [defendant] chose to extinguish, to remind the jury that the person whose life was taken was a unique human being.'" *Id.* (quoting *Payne v. Tennessee*, 501 U.S. 808, 830–31, 111 S. Ct. 2597, 2611 (1991) (O'Connor, J., concurring)).  Victim impact evidence "is designed to remind the jury that murder has foreseeable consequences to the community and the victim's survivors." *Id.*  Victim impact testimony is irrelevant and, therefore, inadmissible "at the guilt-innocence phase of a trial because it does not tend to make more or less probable the existence of any fact of consequence with respect to guilt or innocence." *Love*, 199 S.W.3d at 456–57 (citing *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990)).

Appellant identifies the following statements from Frye's testimony as victim impact evidence:

- The complainant's father-in-law has died;

- The complainant's son, D.F., had seizures;

- The aforementioned events caused Mrs. Frye to stop working for two years;

- The complainant's family had a cat named Fuzzy;

8

- In addition to Fuzzy, the complainant's family had three dogs, a Pomeranian, a stray, and a dog named Pluto that was a Christmas present;

- The complainant and his family lived in a house that "had been in the family a long time" and that had been purchased from the complainant's father;

- The complainant was very outgoing, funny, and passionate;

- The complainant "did all kinds of things" with his family;

- The complainant and his family spent every Sunday with his parents;

- The complainant rode his bike with his children;

- The complainant was D.F.'s third base coach;

- The complainant was D.F.'s YMCA coach;

- The complainant was an avid golfer and played all the time;

- The complainant got his children involved in golf at an early age;

- The complainant played in charity golf events;

- The complainant liked to bike almost as much as golf; and

- The complainant walked the dogs at night.

As explained above, Appellant's counsel did not object initially to the presentation of some of this evidence. When Appellant's counsel did object, the trial court overruled the objection.

For the purpose of the following harm analysis, we will assume without deciding that all of the above testimony constitutes victim impact evidence. We

9

further assume that the trial court erred by overruling Appellant's objections, and that Appellant's counsel's failure to object to portions of this testimony resulted in his counsel's performance falling below an objective standard of reasonableness. Our focus in this appeal is instead on whether Appellant's substantial rights were affected.

In making the determination of whether Appellant's substantial rights were affected, the factors we consider include the nature of evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *McRae*, 152 S.W.3d at 744. We also consider whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert. *Id.*

Appellant admitted in his custodial statement that he was present when the complainant was shot. The State presented the jury with an audio recording of Appellant admitting to relatives of Mora's that Appellant shot a man while Mora was attempting to rob him. Before that recorded conversation, Appellant told Wilson over the phone that he went with Mora to a man's house in Atascocita, where the complainant lived. Appellant said the man began to wrestle with Mora and then came after him. Appellant shot him because the man saw his face.

In addition, the evidence from trial establishes that Mora and Taylor identified Appellant as being involved in the robbery and murder. Crutcher, a

friend of Appellant's, testified that, on the evening before the incident, Appellant, Mora, and Taylor were at Crutcher's apartment. Mora announced, "Let's go hit a lick," which means to commit a crime. Appellant, Mora, and Taylor then left. They returned around 6:00 the next morning. Crutcher saw Mora rubbing down a gun. Mora's fingerprint was found on a car at the scene of the crime.

Dixon, a friend of Mora's and Appellant's, saw Appellant with a gun some time before the incident in question. Dixon offered to buy the gun, but Appellant declined. A day or two after the incident, Appellant asked Dixon if he was still interested in buying the gun and sold it to Dixon. A forensic test determined that the bullet found near the scene of the crime came from the gun Appellant sold to Dixon.

There was extensive evidence, including Appellant's own admission, establishing Appellant as the shooter. Frye's testimony was not emphasized. The testimony did not come from an expert. Although the State referenced Frye's testimony during closing, it did not discuss the details of her testimony and it did not dwell on the testimony. Instead, the State's closing argument focused on the evidence linking Appellant to the murder.

Appellant argues that the victim impact testimony had a significant impact on the jury's determination because evidence of his guilt "was often at odds with itself," but provides no explanation or citations to the record to support this

argument. *See* TEX. R. APP. P. 38.1(i) (requiring arguments to be supported by citations to the law and to the record). He also argues that the evidence of Appellant's involvement was from questionable sources. While much of the evidence establishing Appellant's involvement came from close friends or relatives of Mora, one of Appellant's accomplices, all of the evidence also identifies Mora's involvement in the crime. In other words, none of the evidence from Mora's friends or relative implicates Appellant in lieu of Mora. Moreover, the fact that Mora was not identified as the shooter does not lessen his criminal culpability. *See* TEX. PENAL CODE ANN. § 7.02(b) (Vernon 2011) (establishing criminal responsibility for offense committed by another when, in the attempt to commit one felony, another felony is committed by one of the conspirators).

Furthermore, one piece of evidence establishing Appellant's guilt was a recording of Appellant admitting to the shooting. Appellant suggests that this recording "was made under physically intimidating circumstances." There is no evidence to support this argument, however. While the evidence establishes that the three other men present during the recording were all taller than Appellant, there is no evidence that any of them took any action to intimidate Appellant. Instead, the evidence establishes that Appellant willingly told them where he was, Appellant willingly approached them when they drove to that location, and only one man got out of the car during the conversation.

Considering the heavy weight of evidence establishing Appellant's involvement in the murder—including Appellant's recorded admission—and considering how little emphasis the victim impact testimony was given during the trial and during the State's closing argument, we hold that its admission did not affect Appellant's substantial rights or have a substantial and injurious effect or influence in determining the jury's verdict. *See Kibble*, 340 S.W.3d at 20. Accordingly, it does not constitute reversible error. Because the victim impact testimony does not constitute reversible error, the portion of the testimony to which Appellant did not object also cannot establish the harm element of Appellant's ineffective assistance of counsel claims.

We overrule Appellant's four issues.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

13